IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| KAMARI LEWIS, | ) | |
| | ) | |
| Plaintiff | ) | 3:09-CV-99 |
| | ) | |
| v. | ) | Action for Breach of Express |
| | ) | Warranty, Breach of Implied |
| MAZDA MOTOR of AMERICA, INC. | ) | Warranty, Strict Liability, |
| d/b/a MAZDA NORTH AMERICAN | ) | Negligence, Negligent |
| OPERATIONS, FORD MOTOR | ) | Infliction of Mental and Emotional |
| COMPANY, and PLAZA MOTORS | ) | Distress, Negligent Entrustment, |
| CORPORATION, | ) | Punitive Damages, Compensatory |
| | ) | Damages, **Negligent** |
| Defendants. | ) | **Misrepresentation, Intentional** |
| | ) | **Fraud, Design Defect,** |
| | ) | **Manufacturing Defect, Marketing** |
| | ) | **Defect, Failure to Warn, Failure** |
| | ) | **to Inspect, Intentional** |
| | ) | **Infliction of Emotional Distress,** |
| | ) | **Violation of Magnuson-Moss** |
| | ) | **Warranty Act, 15 USC 2301, et.** |
| | ) | **seq., Violation of Uniform** |
| | ) | **Commercial Code, Seatbelt** |
| | ) | **Failure, Unfair Business Practice,** |
| | ) | **Head Injury, & False Advertisement.** |
| | ) | |
| | ) | JURY TRIAL DEMANDED |

## MOTION IN LIMINE TO EXCLUDE TESTIMONY FROM

## DEFENDANTS' EXPERT WITNESS JORGE HERRERA, Ph. D. M.D.

Kamari Lewis requests that this Court exclude defendants' expert Jorge Herrera, Ph. D. M. D.

from testifying in this matter. This request is made for two reasons. This request is made

pursuant to Federal. Rules of Evidence 702, 703, 706, 403, and 104(a). First, Dr. Herrera failed

to comply with the Fed. R. Civ. P. 26(a)(2)(B). And second, Dr. Herrera does not comply with

**Kamari Lewis v. Mazda Motors & Ford Motor Company**
**3:09-CV-99**
**Motion in Limine to Exclude Testimony from Defendants' Expert**
**Witness Jorge Herrera, M. D.**
**Page No. 2 of 16**

Fed. R. of Evid. 702.

## I. LAW ON EXPERT TESTIMONY

Fed. R. of Evid. 702 provides:

 A witness who is qualified as an expert by knowledge, skill, experience,

 training, or education may testify in the form of opinion or otherwise if:

 (a) The expert's scientific, technical, or other specialized knowledge will

  help the trier of fact to understand the evidence or to determine a fact in issue;

 (b) The testimony is based on sufficient facts or data;

 (c) The testimony is the product of reliable principles and methods; and

 (d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. of Evid. 703 provides:

 An expert may base an opinion on facts or data in the case that the expert has been

 made aware of or personally observed. If experts in the particular field would

 reasonably rely on those kinds of facts or data in forming an opinion on the

 subject, they need not be admissible for the opinion to be admitted. But if the facts

 or data would otherwise be inadmissible, the proponent of the opinion may disclose

 them to the jury only if their probative value in helping the jury evaluate the

 opinion substantially outweighs their prejudicial effect.

Fed. R. of Evid. 104(a) provides:

 (a) The court must decide any preliminary question about whether a witness is

 qualified, a privilege exists, or evidence is admissible. In so deciding, the

**Kamari Lewis v. Mazda Motors & Ford Motor Company**
3:09-CV-99
Motion in Limine to Exclude Testimony from Defendants' Expert
Witness Jorge Herrera, M. D.
Page No. 3 of 16

court is not bound by evidence rules, except those on privilege.

The principles of Federal Rules of Evidence 104 (a) governs the admissibility of expert testimony. This rule provides that the proponent has a burden of establishing that the admissibility requirements are met by a preponderance of the evidence. See ***Bourjaily v. United States, 483 U. S. 171 (1987).***

A judge is required to make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid. And whether that reasoning and methodology could be properly applied to the facts at issue in the case. ***Daubert v. Merrill Dow Pharm., Inc. 509 U. S. 579 (1993).*** The Court stated that whether it's theory or methodology is scientific knowledge that can be tested is the key to inquiry. ***Id at 588-89.*** Expert testimony discussed in scientific knowledge, the methodology or technique upon which it was space must be relevant, reliable, helpful, and fit. ***Id at 589-92***.

The Court set forth the following non exhaustive factors to be considered:

(1) whether the experts technique or theory can or has been tested-that is, whether the experts the week can be challenged in some objective sense, or whether it is simply a subjective, conclusory approach that cannot reasonably be assessed for reliability;

(2) whether the technique or theory has been subject to peer review and publication;

(3) the known or potential rate of error of the technique or theory when applied;

(4) the existence and maintenance of standards and controls; and

(5) whether the technique or theory has been generally accepted in the scientific community.

**Kamari Lewis v. Mazda Motors & Ford Motor Company**
3:09-CV-99
Motion in Limine to Exclude Testimony from Defendants' Expert
Witness Jorge Herrera, M. D.
Page No. 4 of 16

*Id at 593-594.*

It was emphasized by the Supreme Court that inquiry was to be a flexible one, focused primarily on principles and methodology. *Id at 594-95*.

The Supreme Court extended the trial judge's discretionary authority to include the experts rationale and conclusions. ***General Electric Co. v. Joiner, 522 U. S. 126 (1997)***.

The *Daubert* reliability factors are not a definitive checklist or tests but a group of factors that in the court's discretion may be considered when determining the admissibility of expert testimony. ***Kumho Tire Co., Ltd. v. Carmichael, 526 U. S. 137 (1999).***

## DISCUSSION

### A. DR. HERRERA FAILED TO ADHERE TO FED. R. CIV. P. 26(a)(2)(B)

Defendants' expert has failed to comply with the Federal Rules of Civil Procedure 26(a)(2) (B). An expert witness is required to produce and sign a report that includes: a complete statement of all opinions; the basis and reasons for the opinions; all data or other information considered by the witness; any exhibits to be used as a summary of or in support of the opinions; the witness's qualifications, including a list of all publications authored by the witness in the preceding 10 years; the compensation to be paid to the witness; and a list of all cases in which the expert has testified in the preceding four years. Fed. R. of Civ. Proc. 26(a)(2) (B). The report produced by Dr. Herrera does not meet the mandatory requirements of the Federal Rules of Civil Procedure 26(a)(2) (B).

Dr. Herrera opines that the lack of brain shrinkage by Mr. Lewis represents a lack of Traumatic Brain Injury (TBI). Search as you may, nowhere in Dr. Herrera's expert report dated August 15,

**Kamari Lewis v. Mazda Motors & Ford Motor Company**
3:09-CV-99
**Motion in Limine to Exclude Testimony from Defendants' Expert Witness Jorge Herrera, M. D.**
Page No. 5 of 16

2012 do you find any statement that a lack of brain shrinkage by Mr. Lewis means he did not have a TBI. Although Dr. Herrera states that there are no prior studies available for comparison, he maintains that there was no brain shrinkage. (Herrera Dep. Tr. At 79).

There is no basis and reason for the opinion that a lack of brain shrinkage equals no TBI.

Dr. Herrera does not state in his report the data or information considered in forming his opinion that lack of brain shrinkage means no TBI. See Exhibit A. Since the report fails to meet the mandatory requirements, the expert should be excluded from testifying.

Any party who without substantial justification fails to disclose the required information is not permitted to use the witness at trial unless such failure is harmless. Fed. R. Civ. Proc. 37( c)(1). The district court may impose other appropriate sanctions in addition to or in lieu of the evidentiary exclusion. **Id**. Here, there is no justification for defendant's failure.

    **B. DR. HERRERA HAS NOT RELIABLY APPLIED ANY PRINCIPLES AND METHODS TO THE FACTS OF THE CASE**

Dr. Herrera states that he is a member of the American Psychological Association. (Herrera Dep Tr. At Pg. 12 L 24-25). Experts providing testimony are required to comply with the rules promulgated by the American Psychological Association. The DSM-IV is the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatry Association, Fourth Edition. It is used to assign diagnosis. (Herrera Dep. Tr. At 61).

Doctor Herrera admits that the DSM-IV does not provide any diagnostic criteria for malingering. (Herrera Dep. Tr. At 108). And he admits that the DSM-IV does not define malingering as an

**Kamari Lewis v. Mazda Motors & Ford Motor Company**
**3:09-CV-99**
**Motion in Limine to Exclude Testimony from Defendants' Expert**
**Witness Jorge Herrera, M. D.**
**Page No. 6 of 16**

illness. (Herrera Dep. Tr. At 108-109). Doctor Herrera also admits that the DSM-IV has four basic requirements that you look for to determine if someone is malingering. (Herrera Dep. Tr. At 109). The four requirements are:

1. Medicolegal context of presentation (e. g. the person is referred by an attorney to the clinician for examination).

2. Marked discrepancy between the claimed stress or disability and the objective findings.

3. Lack of cooperation during the diagnostic evaluation and in complying with the prescribed treatment regimen.

4. The presence of Antisocial Personality Disorder.

Dr. Herrera admits that none of the four requirements were present with Mr. Lewis. (Herrera Dep. Tr. At 114). Mr. Lewis was not referred to him by his attorney. (Herrera Dep. Tr. At 109). He cooperated with him during the testing. (Herrera Dep. Tr. At 110). There were no marked discrepancy between the disability claimed and objective findings. (Herrera Dep. Tr. At 111). Nor did he find any antisocial personality. (Herrera Dep. Tr. At 111-112). The doctor even admits that he did not find Mr. Lewis exaggerating the symptom test administered. (Herrera Dep. Tr. At 120).

Dr. Herrera admits that none of the four requirements were found in Mr. Lewis, yet he opines that Mr. Lewis does not suffer from a TBI but is instead a malingerer. (Herrera Dep. Tr. At 54 – 55). He agrees that Ramona Moss, Ph. D. did not find Mr. Lewis to be malingering. (Herrera Dep. Tr. At 58). Dr. Herrera states that he is required to document the findings of all tests administered to Mr. Lewis. Dr. Herrera states that he doubts the veracity of his findings. (Herrera

**Kamari Lewis v. Mazda Motors & Ford Motor Company**
**3:09-CV-99**
**Motion in Limine to Exclude Testimony from Defendants' Expert**
**Witness Jorge Herrera, M. D.**
**Page No. 7 of 16**

Dep. Tr. At 90). In his report, Dr. Herrera reports on the findings of the tests administered. At his deposition he states "it says "finding," but that is what I found; but it doesn't mean that I have to agree with it." (Herrera Dep. Tr. At 101). Doctor Herrera states:

"Well, he struck his head and there are documentations towards concussion, but there is no evidence." (Herrera Dep. Tr. At 132 and 133). He states that Dr. Moss did not offer any diagnoses of head trauma under the DSM-IV. (Herrera Dep. Tr. At 65). But Dr. Tyne offered a diagnosis of head trauma under the DSM-IV. (Herrera Dep. Tr. At 65). And his medical records showed that he suffered a concussion. Yet Dr. Herrera maintains there was no evidence of concussion.

Dr. Herrera admits that TBI interrupts the growth and development of a child. (Herrera Dep. Tr. At 120). And he agrees that TBI has long term effects on a child. (Herrera Dep. Tr. At 121). He also agrees that TBI has an impact on the family, it can be associated with violent rages, and explosive anger. (Herrera Dep. Tr. At 121).

Doctor Herrera agrees that the frontal area of the brain is involved with thinking, decision making and personality. (Herrera Dep. Tr. At 124).

The doctor admits that in pediatric head injury, the child starts to fall back and fall back. Then a lag develops. (Herrera Dep. Tr. At 127-128). That occurred with Mr. Lewis. He went from being a quick thinker to failing classes and not graduating from Junior High School. (Anthony Dep. Tr. at Pg. 15, L 16-19).

Dr. Herrera states that attention deficit disorder, the inattentive type has its onset prior to age 7. (Herrera Dep. Tr. At 63). Before age 7, Mr. Lewis was never diagnosed with any attention deficit disorder. In fact, he was referred to as a quick thinker. See Exhibit B. He made the honor roll.

**Kamari Lewis v. Mazda Motors & Ford Motor Company**
3:09-CV-99
Motion in Limine to Exclude Testimony from Defendants' Expert
Witness Jorge Herrera, M. D.
Page No. 8 of 16

See Exhibit C. It was only after the accident, that he began to experience problems with his memory and his academic abilities suffered. Despite the doctors statement on attention deficit disorder, he believes that an individual's academic performance from kindergarten through third grade is not a predictor of academic achievement later in life. (Herrera Dep. Tr. At 81).

Doctor Herrera claims that Mr. Lewis is a malingerer. But he agrees with Tom Tyne, Ph. D. that Mr. Lewis was an overachiever. (Herrera Dep. Tr. At 134). And he agrees that Mr. Lewis' score of the 34th percentile on the Iowa Test when he was in the eleventh grade was not that good. (Herrera Dep. Tr. At 136).

Doctor Herrera testified that he reviewed the lab results from the Cleveland Clinic and the results were normal. He did not have a brain tumor. Nor did he have a liver dysfunction. (Herrera Dep. Tr. At 138-139).

Dr. Herrera choices to turn a blind eye to the overwhelming evidence he unearthed. He ignores the standards required by his association. He provides a report sorely for litigation. He is not providing information to assist the trier of fact.

   **C. DR. HERRERA DID NOT USE ANY RELIABLE PRINCIPLES**

Dr. Herrera did not review the findings of his peers. If he had, he would have discovered that other practitioners have reported that the complexity of higher cognitive functions complicates the task of assessing brain injuries. They have ascertained that there is a variety of presentations that are associated with different types of brain dysfunction. That there may be delayed signs of functional impairment. Practitioners in the field recognize that serious neurological complications can occur without objective findings.. See T. J. Blakely and D. E. Harrington, Mild Head Injury Is Not Always Mild: Implications For Damage Litigation, Medicine, Science

**Kamari Lewis v. Mazda Motors & Ford Motor Company**
**3:09-CV-99**
**Motion in Limine to Exclude Testimony from Defendants' Expert**
**Witness Jorge Herrera, M. D.**
**Page No. 9 of 16**

and Law 33 (3) (1993), 231-242; C. A. Czubaj, Traumatic Brain Injury-An Intellectual Need For Cognitive Rehabilitation, Education 117 (1) (1996), 51; J. P. Kelly, M. Ramundo, D. J. Thurman, B. J. Zink, and N. Walsh-D'Epiro, Improving Outcome After Brain Trauma, (Emergency Handbook), Patient Care 331 (13) (1997), 36; NIH Consensus Development Panel Rehabilitation Of Persons With Traumatic Brain Injury, NIH Consensus Statement 16(1) (1998), 1-41., R. J. Sbordone, G. D. Seyranian and R. M. Ruff, Are the Subjective Complaints of Traumatically Brain Injured Patients Reliable? Brain Injury 12 (6) (1998), 505-515; S. Thornhill A. M. Teasdale, G. D. Murry, J. McEwen, C. W. Roy and K. I. Penny, Disability In Young People and Adults One Year After Head Injury: Prospective Cohort Study, British Medical Journal 320 (June 2000), 1631-1635.

Doctor Herrera also fails to exhibit an awareness that a TBI may be misinterpreted as mild or insignificant. Again this has been document by practitioners. *Id*.

A person with a brain injury may perform poorly on tests experts claim support malingering. One such test is the MMPI-2. The MMPI-2 contains items that give points towards a conclusion of malingering if the client endorses symptoms of confusion, health issues or mental illness. If the client is sick and answers true to items that make up some of those symptoms- and he gets points for being a malingerer. Dr. Herrera fails to account for this known fact.

Dr. Herrera claims that the National Academy of Neuropsychology has a protocol for evaluation. (Herrera Dep. Tr. At 49-50). He states that he saw Mr. Lewis on July 31, 2012. (Herrera Dep. Tr. At Pg. 18, L 13-14). Dr. Herrera interacted with him for three hours. And he claims that he observed Mr. Lewis for two or three hours. (Herrera Dep. Tr. At Pg. 18, L 13-14).

**Kamari Lewis v. Mazda Motors & Ford Motor Company**
**3:09-CV-99**
**Motion in Limine to Exclude Testimony from Defendants' Expert**
**Witness Jorge Herrera, M. D.**
**Page No. 10 of 16**

He states that he took his history. (Herrera Dep. Tr. At 19). Dr. Herrera states that Mr. Lewis told him he remembered his mother assisted him in getting out of the vehicle. (Herrera Dep. Tr. At 20). Mr. Lewis informed him that he was in and out of consciousness. (Herrera Dep. Tr. At 20). The doctor credits his age for this. (Herrera Dep. Tr. At 20). Mr. Lewis told him he had short-term memory difficulties. (Herrera Dep. Tr. At 23). He also reported suffering headaches approximately twice per week. (Herrera Dep. Tr. At 25).

The doctor reported that Mr. Lewis told him his headaches began after he sustained a head trauma in 1997. (Herrera Dep. Tr. At 26).

Dr. Herrera reported that Mr. Lewis was compliant. (Herrera Dep. Tr. At 27). He reported that he appeared to be forgetful but in the wrong places. (Herrera Dep. Tr. At 28). Dr. Herrera claims psychologists address both cognitive and emotional issues but not with an understanding of the reasons behind their findings. (Herrera Dep. Tr. At 35). He states that the brain can dysfunction because of a liver dysfunction, renal end-stage renal encephalopathy, and ingesting the wrong kinds of things.

Dr. Herrera administered approximately 20 tests to Mr. Lewis. After administering the tests to Mr. Lewis, Dr. Herrera reported his findings. The findings range from absence of impairment to severe impairment. (See Exhibit A). Dr. Herrera administered the Conners Continuous Performance Tests II to Mr. Lewis. His findings were that the numbers of errors and omissions made by Mr. Lewis reflected severely impaired ability to resist perseveration and to maintain the focus of attention throughout the performance of the test. (Herrera Dep. Tr. At 86). And he admits that his scores put him in the impaired range. (Herrera Dep. Tr. At 87).

Dr. Herrera gave Mr. Lewis the Digit Vigilance Test. Data showed that he had borderline

**Kamari Lewis v. Mazda Motors & Ford Motor Company**
3:09-CV-99
**Motion in Limine to Exclude Testimony from Defendants' Expert Witness Jorge Herrera, M. D.**
Page No. 11 of 16

performance in attentional processes. (Herrera Dep. Tr. At 88).

Dr. Herrera gave Mr. Lewis the Wisconsin Card Sorting Test. This test showed that Mr. Lewis was moderately dysfunctional and lacks ability to shift attention adaptively and resist perseveration. (Herrera Dep. Tr. At 90-91).

Dr. Herrera gave Mr. Lewis the Category Test. His findings showed mild impairment. (Herrera Dep. Tr. At 92).

Dr. Herrera gave Mr. Lewis the Symbol Digit Modalities Test. He stated that it points to the presence of mild impairment and incidental learning of auditory visual associations and naming functions of language assessed. (Herrera Dep. Tr. At 93).

Dr. Herrera also gave Mr. Lewis the Trail Making Test. In part A of the Trail Making Test, he found the presence of severe impairment. In part B of the test, he found his level of impairment to be mild. (Herrera Dep. Tr. At 96).

Dr. Herrera gave Mr. Lewis the Control Oral Word Association Tests. The findings of this test showed mild impairment. (Herrera Dep. Tr. At 97).

Dr. Herrera gave Mr. Lewis the Stroop Word and Color Test. In his deposition he stated that he found mild impairment in the attentional processes and naming function of language. (Herrera Dep. Tr. At 100). But in his report he found moderate impairment. (See Report at page 11).

Dr. Herrera gave Mr. Lewis the Rey Auditory Verbal Learning Test. He found mild impairment and no impairment in Mr. Lewis. (Herrera Dep. Tr. At 102-103).

Mr. Lewis was given the Rey Osterrieth Complex Figure Test. Mr. Lewis showed absence of impairment and thirty minutes later mild impairment. (Herrera Dep. Tr. At 103).

He gave Mr. Lewis to Revised Benton Visual Retention Tests. Dr. Herrera found that he did very

**Kamari Lewis v. Mazda Motors & Ford Motor Company**
**3:09-CV-99**
**Motion in Limine to Exclude Testimony from Defendants' Expert**
**Witness Jorge Herrera, M. D.**
**Page No. 12 of 16**

poorly. And he does tend to perseverate sometimes. (Herrera Dep. Tr. At 104).

The doctor then states:

> "Perseveration is a condition which people have in which they tend to function on the same ideas as they did before and now the idea no longer being the applicable one and that happens and it handles to him.
>
> I mean there was. I mean there has to be a problem he may have." (Herrera Dep. Tr. At 104).

In his report, Dr. Herrera finds noticeable impairment in the Revised Benson Visual Retention Test. This test measures the connection between attention and memory.

Dr. Herrera administered the Grooved Pegboard Test to Mr. Lewis. He had severe impairment with the dominant hand. And he had mild impairment with the non dominant hand.

Dr. Herrerra admits that impairment is not good. (Herrera Dep. Tr. At 105). And he admits that any impairment would be detrimental to Mr. Lewis if it reflects something wrong with his brain. (Herrera Dep. Tr. At 105). The doctor admits that any impairment would be detrimental because it would limit his ability. (Herrera Dep. Tr. At 105-106).

The tests administered by the doctor shows impairment in Mr. Lewis. The doctor fails to acknowledge the impairments. He admits that something is wrong with Mr. Lewis. Dr. Herrera cannot bring himself to comply with the Fed. R. of Evid. 702. He cannot use reliable principles to provide the trier of fact with assistance. Dr. Herrera should be barred from presenting evidence in this case.

**Kamari Lewis v. Mazda Motors & Ford Motor Company**
3:09-CV-99
Motion in Limine to Exclude Testimony from Defendants' Expert
Witness Jorge Herrera, M. D.
Page No. 13 of 16

### D.  DR. HERRERA'S TESTIMONY IS NOT BASED ON SUFFICIENT FACTS OR DATA

Doctor Herrera did not obtain any collateral interview data. He did not talk to Mr. Lewis' mother, father, or siblings. Nor did he talk to any of his treating physicians. It has been documented that collateral interview data is often helpful in obtaining information the patient is reluctant to reveal. And it can assist in assessing the truthfulness of the client's complaints. See, R. J. Sbordone, G. D. Seyranian and R. M. Ruff, The Use of Significant Others to Enhance the Detection of Malingerers from Traumatically Brain-Injured Patients. Archives of Clinical Neuropsychology 15 (6) (2000), 465-477.

An expert may gave an explanation of scientific or other principles relevant to the case. The trier of fact is then left to apply them to the facts. See Notes of Advisory Committee on Proposed Rules. Here Dr. Herrera will not give an explanation of principles relevant to the case. The principles of Federal Rules of Evidence 104 (a) governs the admissibility of expert testimony. This rule provides that the proponent has a burden of establishing that the admissibility requirements are met by a preponderance of the evidence. See ***Bourjaily v. United States, 483 U. S. 171 (1987).***

A judge is required to make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid. And whether that reasoning or methodology could be properly applied to the facts at issue in the case. ***Daubert v. Merrill Dow Pharm., Inc. 509 U. S. 579 (1993).*** The Court stated that whether it's theory or methodology is scientific knowledge that can be tested is the key to inquiry. ***Id at 588-89.*** Expert testimony discussed in scientific knowledge, the methodology or technique upon which it was space must be relevant, reliable, helpful, and fit. ***Id at 589-92***.

**Kamari Lewis v. Mazda Motors & Ford Motor Company**
**3:09-CV-99**
**Motion in Limine to Exclude Testimony from Defendants' Expert**
**Witness Jorge Herrera, M. D.**
**Page No. 14 of 16**

It was emphasized by the Supreme Court that inquiry was to be a flexible one, focused primarily on principles and methodology. *Id at 594-95*.

The Supreme Court extended the trial judge's discretionary authority to include the experts rationale and conclusions. *General Electric Co. v. Joiner, 522 U. S. 126 (1997)*.

The Daubert reliability factors are not a definitive checklist or tests but a group of factors that in the court's discretion may be considered when determining the admissibility of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael, 526 U. S. 137 (1999).*

The court in *In re Paoli R. R. Yard PCB Litigation, 35 F. 3d 717, 744 (3d Cir. 1994)*, stated that proponents "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of the experts are correct, they only have to demonstrate by preponderance of evidence that their opinions are reliable …. The evidentiary requirement of reliability is lower than the merits standard of correctness."

Dr. Herrera should be precluded from offering testimony for the following reasons. First, his opinion is not reliable. Second, he states that he does not believe the veracity of the test results that he administered. Third, although he admits that malingering is not an illness, he labels Mr. Lewis as a malingerer. Fourth, he admits that Mr. Lewis did not exhibit any of the four factors that DSM-IV, the diagnostic tool used by practitioners states should be documented before one may be deemed a malingerer. Fifth, he admits that Mr. Lewis has a problem, but still believes he is malingering. Sixth, his expert report does not comply with Fed. R. Civ. P. 26. Nowhere in Dr. Herrera's Expert Report does he state that the absence of brain shrinkage in Mr. Lewis shows the absence of TBI.

In his deposition, he conjures up a supposedly lack of brain shrinkage as representing lack of

**Kamari Lewis v. Mazda Motors & Ford Motor Company**
**3:09-CV-99**
**Motion in Limine to Exclude Testimony from Defendants' Expert**
**Witness Jorge Herrera, M. D.**
**Page No. 15 of 16**

TBI. Seventh, in spite of the findings, Dr. Herrera claims that he makes the decision.

Malingering is lying. Dr. Herrera says Mr. Lewis is malingering. But he refused to state under oath that Mr. Lewis is a liar. His evidence is inadmissible as irrelevant and unduly prejudicial.

Dr. Herrera admits that any impairment is detrimental. His findings showed that Mr. Lewis had impairments.

Fed. R. of Evid. 702 does not permit an expert to ignore evidence. The expert is to assist the trier of fact. The protocol of the American Psychology Association requires Dr. Herrera to report his findings not to ignore them.

Kamari Lewis requests that this Court exclude defendant's expert from testifying in this matter.

## CONCLUSION

The Fed. R of Evid. 702 provides the standard for expert testimony. Mr. Herrera does not fit the standard. His testimony will not be based on sufficient facts and data. He fails to comply with the basic standards of the DSM-IV. He concludes that Mr. Lewis is a malingerer. But there is no such illness. Dr. Herrera did not exert any rigorous treatment to his analysis. His findings are not based on reliable methods and principles. They are geared simply for litigation.

**WHEREFORE**, Mr. Lewis requests that the court bar Dr. Herrera from presenting any expert testimony.

**Kamari Lewis v. Mazda Motors & Ford Motor Company**
**3:09-CV-99**
**Motion in Limine to Exclude Testimony from Defendants' Expert Witness Jorge Herrera, M. D.**
**Page No. 16 of 16**

Dated: November 8, 2012                                                Respectfully submitted:

                                                                                                         _s/Joseph Caines_____
                                                                                                         Joseph Caines, Esq.
                                                                                                         Law Offices of Joseph Caines, P.C.
                                                                                                         100 Blackbeard's Hill, Suite 4B
                                                                                                         P.O. Box 307007
                                                                                                         St. Thomas, V.I. 00803
                                                                                                         Tel. 340-774-9277
                                                                                                         Fax. 340-774-9267
                                                                                                         E-mail: cainesj@viaccess.net

## CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** that on the 8th day of November 2012, I caused a true and exact copy of the foregoing **MOTION IN LIMINE TO EXCLUDE TESTIMONY FROM DEFENDANTS' EXPERT WITNESS JORGE HERRERA, Ph. D** to be filed electronically with the Clerk of the Court using the CM/ECF System, which will provide notification to:

   David R. Kelley, Esq.
   Bowman and Brooke, LLP
   150 South Fifth Street, Suite 3000
   Minneapolis, Minnesota 55406

   Bruce P. Bennett, Esq.
   Hunter, Cole & Bennett
   Pentheny Building, 3rd Floor
   1138 King Street, Suite 301
   Christiansted, St. Croix, VI 00820

                                                                                    **/s/ Joseph Caines, Esq.**