IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

| | |
|---|---|
| KAMARI LEWIS, )<br>          Plaintiff, )<br>                            )<br>v.                           )<br>                            )<br>MAZDA MOTOR OF AMERICA, INC. D/B/A MAZDA )<br>NORTH AMERICAN OPERATIONS, and FORD )<br>MOTOR COMPANY, )<br>                            )<br>          Defendants. )<br>                            ) | Case No. 3:09-cv-00099-CVG-RM |

**DEFENDANTS FORD MOTOR COMPANY AND MAZDA MOTOR OF AMERICA D/B/A MAZDA NORTH AMERICAN OPERATIONS' REPLY IN FURTHER SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF JAMES IPSER**

Defendants, FORD MOTOR COMPANY ("Ford") and MAZDA MOTOR OF AMERICA, INC. D/B/A MAZDA NORTH AMERICAN OPERATIONS ("MNAO") (collectively "Defendants"), respectfully submit this reply memorandum in support of their motion, *in limine*, to exclude the testimony of James Ipser.

A. **Defendants Only Seek Exclusion of Ipser's Seatbelt Design Defect Expert Opinion.**

Plaintiff protests that Ipser is qualified as an accident reconstructionist and biomechanic. Defendants' motion, however, does not challenge whether Ipser possesses the requisite background, training, qualifications and experience to opine in the areas of accident reconstructionist and biomechanics. Rather, Ipser's seatbelt design defect opinion is the subject of Defendants' motion. Plaintiff's attempts to qualify Ipser are therefore misplaced.

"An expert may be generally qualified but may lack qualifications to testify outside his area of expertise." *Calhoun v. Yamaha Motor Corp.*, USA, 350 F. 3d 316, 322 (3rd Cir. 2003) (limiting plaintiff's expert's proposed testimony to areas where the expert was qualified to offer

**Defendants' Reply Brief in Further Support of Motion *In Limine* to Exclude James Ipser**
*Lewis v. Mazda Motors of America, et al.*
DC Case No. 09-cv-0099
Page 2

expert opinion). Here, plaintiff does not even attempt to qualify Ipser as an expert in the area of seatbelt design analysis. This is because Ipser completely lacks any background, training, qualifications or experience to opine in the area of seatbelt design analysis. Plaintiff has failed to cite any examples of Ipser ever qualifying in any court to render an expert opinion on an alleged seatbelt defect, and Ipser is not qualified to offer such testimony in this case.

> **B.    Plaintiff's Concession that Ipser Performed No Testing Whatsoever Confirms that Ipser's Opinion is Not Based on Sufficient Facts or Data, Nor is it the Product of Reliable Principles and Methods.**

Plaintiff's brief confusingly—and mistakenly—seems to imply that Ipser should have been invited to participate in Defendants' surrogate testing and sled testing. (*See* Pl.'s Brief, at 7.) Plaintiff even complains that Defendants' experts' testing was conducted after Ipser's report was due, and that the date and time "was not convenient" for Ipser. (*Id.*) What plaintiff fails to understand, however, is that Defendants' expert's testing was performed, in part, as rebuttal to the vague defect opinion offered by Ipser in his report. Moreover, by the time he was deposed and Ipser was asked to give his final opinions (September 12, 2012), Ipser **had** reviewed Defendants' experts' report of their testing, and he offered no criticism of that testing. (*See* Deposition of James P. Ipser, dated September 12, 2012, at 54:6-10; 127:15—128:6 (Klima) and 53:20-25; 126:22—127:10 (Smith), attached hereto as Exhibit A.) Defendants' experts proved, through their testing, that the subject seatbelt works properly today as it did at the time of accident, and that if it had been worn by plaintiff in the accident, physical evidence would have been left on the belt system. Most importantly, Defendants' experts' testing proves that even if all of the webbing had been pulled out of the retractor, a seat-belted child the same size as

**Defendants' Reply Brief in Further Support of Motion** *In Limine* **to Exclude James Ipser**
*Lewis v. Mazda Motors of America, et al.*
DC Case No. 09-cv-0099
Page 3

plaintiff at the time of the crash could not have reached the windshield. Ipser provides no rebuttal to this testing and analysis by Defendants' experts.

Federal Rule of Evidence 702 requires that expert testimony (1) be based upon sufficient facts or data, and (2) be the product of reliable principles and methods. Plaintiff concedes Ipser performed no testing whatsoever to support his opinion in this case. He has absolutely no facts or data to support his *ipse dixit* opinion that the subject seatbelt is somehow defective. Likewise, his opinion is hardly the product of any reliable principle or method. Any suggestion that Ipser should have been invited to participate in Defendants' surrogate testing and sled testing is simply incorrect, and it certainly does not alleviate Ipser's obligation to "employ[ ] in the courtroom the same level of intellectual rigor that characterizes the practices of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149 (1999).

    C.    **Ipser's Failure to Reconcile his Opinion with Independent FMVSS 209 Certification is Unrebutted by Plaintiff.**

Plaintiff attempts to rehabilitate Ipser by imagining a criticism of Ipser that Defendants did not even offer. Specifically, plaintiff incorrectly asserts that Defendants have criticized Ipser's failure to review the testing certification files demonstrating that the subject vehicle's seatbelts were in compliance with Federal Motor Vehicle Safety Standard ("FMVSS") 209. While such a failure would potential constitute grounds for exclusion of Ipser's testimony, Defendants did not make this argument. Instead, Defendants argued that Ipser's opinion that the subject seatbelt "failed to perform according to FMVSS standards" in the crash completely ignores his own admission that the seatbelt system in the B-3000 was independently tested for FMVSS compliance, and it passed.

**Defendants' Reply Brief in Further Support of Motion *In Limine* to Exclude James Ipser**
*Lewis v. Mazda Motors of America, et al.*
DC Case No. 09-cv-0099
Page 4

The reason Defendants did not criticize Ipser for failing to review the independent certification files is because he *did* in fact review them prior to his deposition:

> Q. Included in that list of documents being relied upon by Mr. Klima and that have been now produced to counsel is what we refer to as a Ford Ranger/Mazda FMVSS 209 certification files for this seat belt system; in other words, the files that reflect what analysis was done to certify compliance of this restraint system, this seat belt with FMVSS 209, the same FMVSS standard which your report suggests the belt in this case did not perform in accordance with. Have you reviewed those certification files?
>
> A. I think I have. Yes, sir.

(Ipser Dep. at 136:16—137:1.) Thus, regardless of whether Ipser received the certification files before or after his expert report deadline, he had an opportunity at his deposition to reconcile his opinion that the subject seatbelt "failed to perform according to FMVSS standards" with the independent testing showing that it does in fact comply. Instead, he admits he does not take issue with the independent FMVSS 209 compliance:

> Q. And isn't it true that they indicate that this system was, in fact, independently tested for compliance with FMVSS 209 and it passed?
>
> A. Yes.
>
> Q. Do you take issue with that result in any way?
>
> A. No, sir.

(Ipser Dep. at 137:2-7.) This unqualified admission completely undercuts Ipser's design defect opinion, such as it is.

**Defendants' Reply Brief in Further Support of Motion *In Limine* to Exclude James Ipser**
*Lewis v. Mazda Motors of America, et al.*
DC Case No. 09-cv-0099
Page 5

    **D.**    **Plaintiff's Attacks on Defendants' Experts' Opinions do not save Ipser's Inadmissible Opinion.**

Throughout plaintiff's brief, plaintiff attacks the methodology employed by Defendants' experts. Plaintiff filed separate motions to exclude Defendants' experts, and Defendants have separately responded to the arguments offered by plaintiff in those motions. It is not necessary to repeat Defendants' responses here. Nonetheless, the attacks lodged by plaintiff against Defendants experts highlight several notable flaws underlying Ipser's opinions.

First, in response to Defendants' unchallenged argument that the sole basis for Ipser's assumption that plaintiff was properly belted in the accident came from the claim of plaintiff and plaintiff's own mother, and is therefore not a reliable basis for Ipser's opinion, plaintiff suggests that Defendants' experts are themselves "self serving interested entities." Plaintiff is mixing apples and oranges. While it is true that Defendants' experts primarily testify on behalf of product manufacturer defendants, the critical distinction is that they still base their opinions on scientifically independent, sufficient or reliable facts and data—because this is what is required of them in order to satisfy Rule 702. Ipser, on the other hand, is basing his entire opinion in this case on the testimony of interested parties. Moreover, in doing so, Ipser also admits that he failed to consider other possible alternative explanations for plaintiff's injury, such as plaintiff not wearing his seatbelt properly,[1] not wearing it at all,[2] or being seated out of position.[3] The key difference eluding plaintiff is that although plaintiff may cross-examine Defendants' experts on their own "defense bias," Ipser is opinion is fundamentally flawed because it is not based on any reliable facts and data.

---

[1] (*See* Ipser Dep. at 79:6-8.)
[2] (*Id* at 78:23—79:2.)
[3] (*Id*. at 79:9-12.)

**Defendants' Reply Brief in Further Support of Motion *In Limine* to Exclude James Ipser**
*Lewis v. Mazda Motors of America, et al.*
DC Case No. 09-cv-0099
Page 6

In addition, plaintiff suggests (without any support or citation) that there is debate within the scientific community regarding when and under what conditions evidence of loading during an accident will be left on a seatbelt. Based on this suggestion, plaintiff appears to claim that Defendants' experts' opinions are flawed because they did not consider all of the factors that may be involved, or that they did not account for the possibility that the seatbelt allegedly might have been subsequently replaced.[4] Critically, however, plaintiff fails to explain how it is that Ipser was able to form his opinion that the seatbelt was defective even though he never tested it (or any exemplar seatbelts), he never inspected it, never inspected the subject vehicle, never looked at any exemplar seatbelt, never looked at any drawings of the seatbelt system, and admits that he does not even know how the seatbelt system in the subject vehicle actually works. The Court's function under Rule 702 is to act as "gatekeeper" to assure that the technique, procedure, and methodology upon which an expert opinion is founded is reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592 (1993)). Plaintiff is free to cross-examine Defendants'

---

[4] Defendants address plaintiff's completely unsupported suggestion that the seatbelt was replaced after a second accident in response to Plaintiff's Motion in Limine To Exclude Testimony From Defendants' Expert Witness Michael Klima. (*See* Defendants Ford Motor Company and Mazda Motor of America d/b/a Mazda North American Operations' Response to Plaintiff's Motion in Limine To Exclude the Testimony of Michael Klima, ECF Docket # 200, at 7.) As discussed in that response, the suggestion that the belt was replaced has no basis in fact. To the contrary, the physical evidence and the testimony of fact witnesses demonstrate the belt was never replaced.

Moreover, in response to plaintiff's contention that "Defendants knew of the accident and [inspected] the vehicle in 1999 [and] . . . never stated that no load marks were on the seat belt," this contention is false and misleading. First, it is true that Kevin Breen inspected vehicle and inspected its seatbelts in 1999. (*See* Deposition of Kevin Breen, dated September 21, 2012, at 20:3-5, attached hereto as Exhibit B.) Breen, however, found that the right front seatbelt functioned properly in all respects. (*Id*. at 20:6-24.) Notably, he found no load marks on right front seatbelt in his 1999 inspection. (*Id*.) Breen even photographed the right front seatbelt to document its condition showing no load marks. (*Id*.) Second, plaintiff cites to the expert report of Pam Oviatt, who is not even an expert in this case. Defendants are not aware that Ms. Oviatt ever even inspected the subject vehicle.

**Defendants' Reply Brief in Further Support of Motion *In Limine* to Exclude James Ipser**
*Lewis v. Mazda Motors of America, et al.*
DC Case No. 09-cv-0099
Page 7

experts opinions by questioning what they observed when they inspected the vehicle and its seatbelt. Plaintiff can also cross-examine Defendants' experts observations from their surrogate testing and sled testing. Plaintiff can even cross-examine Defendants' experts about their underlying assumptions about under what conditions evidence of loading during an accident will be left on a seatbelt. But Ipser never did any of this work. He did nothing. Accordingly, his proposed testimony, unlike Defendants' experts' proposed testimony, is not the product of any reliable principals or methods.

      Finally, plaintiff states that Defendants' experts' surrogate study is flawed because they did not know plaintiff's height and weight at the time of the accident. The accident was in May 1997. Just seven months later, in November of the same year, plaintiff's expert, Dr. Nelson recorded plaintiff's weight and height: "Weight 54.5 lbs; Height 48 in." (*See* James D. Nelson, M.D., Neurological Evaluation, dated Nov. 3, 1997 (hereinafter "Nelson Neurological Evaluation"), p. 3, attached hereto as Exhibit C.) The size of the surrogate individual used by Dr. Smith and Mr. Klima in their surrogate studies was a 48 inch tall right front seat passenger surrogate. This was deemed to be the worst case for the defense—the maximum height possible to increase any likelihood that plaintiff could reach the dash or windshield of the subject vehicle with his forehead—the taller the plaintiff is, the more likely would be his ability to contact the dash or windshield with his forehead in the crash.[5] It is not necessary for an automotive crash surrogate to be the ***exact*** size of the actual occupant, rather the surrogate must only be within a ***reasonable margin*** of the occupant's size to allow the expert to draw conclusions about the

---

[5] During the July 12, 2012 surrogate study, Dr. Smith photographed the surrogate's height at 48.5 inches and weight at 55.25 lbs. These photographs were marked as part of Dr. Smith's deposition Exhibit # 7.

**Defendants' Reply Brief in Further Support of Motion *In Limine* to Exclude James Ipser**
*Lewis v. Mazda Motors of America, et al.*
DC Case No. 09-cv-0099
Page 8

movement of the occupant inside the vehicle.[6] The point here, however, is not to demonstrate Defendants' experts conclusions are correct—although they appear to be irrefutable—but rather to demonstrate that they have employed an accepted methodology in order to arrive at their conclusions. In contrast, Ipser employed no methodology to support his opinion that the subject seatbelt is defective. And the fact that plaintiff's arguments against exclusion of Ipser are focused primarily on attacking Defendants' experts only works to highlight why Ipser cannot be allowed to testify in this case. Plaintiff's logic appears to be: if Ipser's testimony is not admissible, then neither is Defendants' experts' testimony. Of course the difference is that Defendants' experts followed reliable methods and principals as they undertook significant work in this case including testing their hypothesis and conducting multiple inspections of the evidence, whereas Ipser did no work at all.

      E.      **Ipser Cannot Escape the Scrutiny of His Mythology (or lack thereof) by His Peers by Not Asking Them to Review his Work.**

As a final example of plaintiff's inability to rehabilitate Ipser, plaintiff desperately argues that peer review of Ipser's work is not necessary because Ipser never asked anyone to peer review his work. This argument defies logic. First, as Defendants have noted, Ipser employed no scientific method, therefore making it impossible for his work to be subjected to peer review. But on a more basic level, *Daubert* and its progeny are not concerned with whether a purported expert asks anyone to peer review their work, but rather whether the methodology employed by the expert has been subjected to peer review. *See Dearson v. Bostrom Seating, Inc.*, 241 F. Supp.

---

[6] Plaintiff also argues that the defense experts supposedly do not know the "size and shape of [plaintiff's] head." (*See* Pl.'s Brief, at 9.) However, plaintiff's expert witness, Dr. Nelson, noted that plaintiff's head was "normacephalic," which means normal head. (*See* Nelson Neurological Evaluation, p. 2.)

**Defendants' Reply Brief in Further Support of Motion *In Limine* to Exclude James Ipser**
*Lewis v. Mazda Motors of America, et al.*
DC Case No. 09-cv-0099
Page 9

2d 494, 496 (E.D. Penn. 2003) (citing *Oddi v. Ford Motor Co.,* 234 F.3d 136 (3d Cir. 2000), *In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, (3d Cir. 1994) and *United States v. Downing,* 753 F.2d 1224 (3d Cir. 1985)).  Here, plaintiff's backwards logic asks this Court to simply disregard this fundamental gatekeeping standard for the admission expert testimony.

For the foregoing reasons, and for the reasons stated in Defendants' moving brief to exclude the testimony of Ipser, Defendants respectfully request that the Court exclude Ipser's testimony from evidence at trial and dismiss plaintiff's claims against them.

BOWMAN AND BROOKE LLP

By:   s/ David R. Kelly
David R. Kelly, Esq.
Admitted *pro hac vice*
150 South Fifth Street, Suite 3000
Minneapolis, Minnesota 55406
david.kelly@bowmanandbrooke.com
Tel.: (612) 672-3226

Dated:   November 21, 2012

and

Bruce P. Bennett, Esq.
VI Bar #512
HUNTER COLE & BENNETT
1138 King Street, 3rd Floor
Christiansted, St. Croix
U.S. Virgin Islands  00820
bbennett@hcbvilaw.com
Tel.: (340) 773-3535

**Defendants' Reply Brief in Further Support of Motion *In Limine* to Exclude James Ipser**
*Lewis v. Mazda Motors of America, et al.*
DC Case No. 09-cv-0099
Page 10

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on the 21st day of November, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filling (NEF) to the following:

Joseph Caines Esq.
P.O. Box 307007
St. Thomas, VI 00802

              s/ David R. Kelly
              David R. Kelly, Esq.
              BOWMAN AND BROOKE LLP
              david.kelly@bowmanandbrooke.com